UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **KELVIN B. WILLIAMS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 3:06-1205 |
| | ) Judge Echols |
| | ) |
| **CINGULAR WIRELESS, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket Entry No. 11), to which Plaintiff Kelvin B. Williams, a 42-year old African American, responded in opposition, and Defendant filed a reply.

This is a race discrimination case brought by Williams against his current employer, Cingular Wireless, LLC, now known as AT&T Mobility LLC ("Cingular"). In his Complaint, Plaintiff asserted claims for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq.*, as well as a claim for age discrimination under the Age Discrimination In Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff testified at his deposition, however, that he is not pursuing a claim for age discrimination. (Docket Entry No. 11-1, Williams Depo. at 55-56.) Consequently, any claim for age discrimination has been abandoned and the Court will not address the issue.

Defendant filed a Statement of Undisputed Material Facts (Docket Entry No. 13), as required by Local Rule 56.01(b). Plaintiff did not respond as required by Local Rule 56.01(c). Therefore, the facts as stated by Defendant are not disputed for purposes of summary judgment. Local Rule 56.01(g).

1

# I. FACTS

Cingular hired Plaintiff in 1994 and promoted him to his current position of Field Engineer in 1999. In 2004, Cingular acquired AT&T Wireless Services Inc., by merger, and Cingular was the surviving company.

In early 2005, the new combined company, Cingular, began a reduction in force ("RIF") that affected all employees in the network. To determine which employees would be "surplused" in the RIF, each employee received a numerical "RIF score" based on two components: (1) the employee's most recent available Performance Evaluation Process ("PEP") and (2) the immediate supervisor's rating of the employee on a scale of 1 to 5 on three "Cingular Success Factors" – "Creates Customer Loyalty," "Drives for Results," and "Uses Sound Judgment."

Plaintiff's supervisor, Jim Brewer, completed rankings of all of his employees using the 2003 PEP scores. Plaintiff's final RIF score was 13.2 out of a possible 20. Plaintiff and seven other Field Engineers, six of whom are white, were slated to be surplused based on their RIF scores, which were lower than other Field Engineers in Cingular's Nashville market.

In March 2005, Cingular informed Plaintiff that he would be surplused effective June 2005 and that he would be eligible for a severance package. Meanwhile, a Field Engineer in Cingular's Memphis market opted to leave the company rather than retain his position in the RIF, which created an open position in Memphis.

Cingular offered Plaintiff a transfer to Memphis based on his RIF score ranking. Plaintiff accepted the Memphis position on March 14, 2005. He received a $10,000 Relocation Bonus to assist in his move.

Excluding Williams, seven Field Engineers were either discharged as surplus employees or left of their own accord prior to the RIF to pursue other opportunities within Cingular. Six were Caucasians (Kyle Barnes, Joseph Allen, John Waycaster, David F. Phillips, Dennis Hayes, and Daryl Smith) and one was African American (Michael T. Brown). No Nashville Field Engineer with a lower RIF score than Plaintiff was allowed to remain a Field Engineer in the Nashville office or was

permitted to relocate to another office. Plaintiff is not aware of any other Nashville Field Engineer of any race who was relocated from Nashville. Plaintiff was the only Field Engineer in Cingular's Nashville market who was relocated as part of the RIF process. Plaintiff's pay, benefits, title and job duties remained the same when he transferred to Memphis as a Field Engineer.

Other than a RIF situation, if a Cingular employee wishes to move into another position at the company, even laterally, the employee must apply for the position using Cingular's online staffing software. The employee must complete an interview with the hiring manager, and be chosen as the most qualified among both internal and external candidates.

In the summer of 2005, a Field Engineer position opened in Cingular's Nashville market when an employee resigned. Cingular posted the opening on its intranet, to which Plaintiff had access, but Plaintiff did not apply for the position. Cingular filled the position with another person.

Later in 2005, another Field Engineer position opened in the Nashville market. Cingular initially incorrectly posted the vacant position as a P2, which corresponds to the pay scale for Senior Field Engineer. Cingular later realized its error and re-posted the position as a P1, the pay scale for Field Engineer. Plaintiff applied for the position, which he believed was a P2 and would be a promotion for him. Before Plaintiff interviewed for the position, Cingular's Senior Human Resources Manager, Patricia Granberg, and Nashville Market Manager, Johnny Keenum, told Plaintiff that Cingular had posted the position in error as a P2, and the vacancy was actually a P1 Field Engineer position. Plaintiff went forward with the interview, but withdrew his name from consideration after the interview before Cingular awarded the position to anyone. Cingular awarded the position to an external candidate, who was hired as a P1 Field Engineer.

Within Cingular's Tennessee and Kentucky markets, employees who are not at the top of their job classification are evaluated for promotion yearly, based in part on the annual PEP score. If an employee receives a promotion recommendation, promotion can be considered until the employee's next PEP. To be eligible for promotion from Field Engineer to Senior Field Engineer, a Field Engineer must achieve a PEP score of 3.5 or better for three consecutive years. On

February 24, 2004, Plaintiff's supervisor, Jim Brewer, recommended Plaintiff for promotion from Field Engineer to Senior Field Engineer, but Plaintiff was not qualified for promotion in 2004, 2005, or 2006 because he received a PEP score of 3.2 in 2004. Plaintiff did not challenge his 3.2 PEP ranking for 2004 within Cingular. He also did not challenge the denial of a 2004 promotion in a charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC").

Plaintiff seeks to compare himself to Caucasians Brian Drake and Keith Pfeiffer. Brian Drake was promoted to Senior Field Engineer in September 2006. His PEP scores in 2004-2006 were: 4.0, 4.1 and 4.1. Keith Pfeiffer did not receive a promotion to Senior Field Engineer in 2006. Prior to working in Nashville, Pfeiffer worked as a manager at Cingular's Central Region Network Operations Center. Before working as a manager, Pfeiffer was a Field Engineer and Senior Field Engineer. In January 2006, Pfeiffer moved to Nashville. He became a Senior Field Engineer, which was essentially a demotion for Pfeiffer.

In July 2005 Plaintiff made an internal complaint of race discrimination regarding his treatment during the RIF. Cingular's Human Resources Department investigated his complaint and concluded that he was properly slated for surplus and was ultimately offered the position in Memphis based on his ranking. These findings were relayed to Plaintiff.

On March 10, 2006, Plaintiff filed a charge of discrimination with the EEOC alleging race discrimination and retaliation. Neither party has filed a copy of this charge in the record. Cingular cites to Exhibit 4 of the Williams deposition as the applicable EEOC charge, but that document is a charge Williams filed in 1997 with the Indiana Civil Rights Commission. Because Plaintiff does not challenge Cingular's characterization of his 2006 EEOC charge in any way, the Court will accept as true Cingular's statements concerning this charge. The parties are cautioned to be certain in any future case that the record contains a copy of the applicable EEOC charge. Plaintiff filed this lawsuit on December 19, 2006.

4

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there is not a genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. ANALYSIS

**A. Promotion claim**

Cingular correctly contends that Plaintiff cannot challenge any promotion decision based on Brewer's 2004 recommendation that Plaintiff be promoted because Plaintiff did not raise this denial-of-promotion issue in a charge of discrimination filed with the EEOC within 300 days of February 24, 2004. See Strouss v. Michigan Dept. of Corrections, 250 F.3d 336, 342 (6th Cir. 2001) ("It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims

unless the claimant explicitly filed the claim in an EEOC charge," affirming dismissal of claims not raised in a charge). The same claim brought under the THRA is also time-barred. The THRA claim is subject to a one-year statute of limitations. Tenn. Code Ann. § 4-21-311(d); George v. Aventis Pharmaceutical, Inc., 252 F.Supp.2d 599, 607 (W.D. Tenn. 2003). Plaintiff did not file suit on this promotion claim within one year of February 24, 2004.

Moreover, Plaintiff admitted at his deposition that he was not qualified for promotion in 2004, 2005 or 2006 because he did not receive a PEP score of 3.5 or better for three consecutive years to be eligible for promotion. (Williams Depo. at 109-110, 211, 250-251.) Plaintiff received a 3.2 PEP score in 2004, which affected his eligibility for a minimum of two years. Thus, Plaintiff cannot establish a *prima facie* case of race discrimination because he cannot show that he was qualified for promotion. See Anthony v. BTR Automotive Sealing Sys., Inc., 339 F.3d 506, 515 (6th Cir. 2003).

Plaintiff also cannot satisfy the fourth element of his *prima facie* case because he cannot prove that a similarly situated ineligible white employee was promoted when Plaintiff was not. See id. It is undisputed that only eligible candidates–those with 3.5 or better PEP scores in three consecutive years–were promoted from Field Engineer to Senior Field Engineer in Plaintiff's market since 2005.

Plaintiff claims that two Caucasians, Brian Drake and Keith Pfeiffer, received better treatment in promotion than he did. Plaintiff must show that he was similarly situated to Drake and Pfeiffer. "To be similarly situated, 'the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Smith v. Leggett Wire Co., 220 F.3d 752, 762 (6th Cir. 2000) (quoted case omitted). Plaintiff's PEP score in 2004 was 3.2, which rendered him ineligible for promotion. Drake achieved the minimum 3.5 needed for promotion and exceeded it in the three years prior to his promotion. Because Drake was eligible for

6

promotion, Cingular promoted him. Pfeiffer, who had previously worked as a Field Engineer, Senior Field Engineer, and manager, was not promoted when he accepted the P2 Senior Field Engineer position in Nashville. Rather, he took a reduction in job responsibilities when he accepted the Senior Field Engineer position. Plaintiff has not shown that he was similarly situated to either Drake or Pfeiffer.

Even if Plaintiff could establish a *prima facie* case, Cingular has put forth legitimate, non-discriminatory reasons for not granting Plaintiff a promotion. Plaintiff has produced no evidence to show that Cingular's proffered reasons were a pretext for racial discrimination. See Laderach v. U-Haul of Northwestern Ohio, 207 F.3d 825, 828 (6th Cir. 2000) (noting that, to show pretext, plaintiff must prove the employer's asserted reason had no basis in fact, the reason did not in fact motivate the adverse employment action, or the reason was insufficient to motivate the adverse employment action). Thus, Cingular is entitled to summary judgment on Plaintiff's promotion claim.

## B. Relocation package claim

Plaintiff alleges he was discriminated against based on race when he was given a less generous relocation package than Caucasian Johnny Keenum, a Market Manager. This claim fails at the outset because Plaintiff did not raise it in a charge of discrimination before the EEOC. In the charge Plaintiff did file, he claimed that the earliest date discrimination took place was August 1, 2005, two months after he received the relocation bonus. Because Plaintiff did not assert this claim in an EEOC charge, this Court is without jurisdiction to consider it. See Strouss, 250 F.3d at 342. Any claim under the THRA is time-barred because Plaintiff did not file suit within one year. See Tenn. Code Ann. § 4-21-311(d); George, 252 F.Supp.2d at 607.

Even if the Court had jurisdiction to hear this claim, Cingular has shown its entitlement to summary judgment on the claim. Cingular paid Plaintiff a $10,000 relocation bonus when he voluntarily agreed to transfer to Memphis rather than lose his job during the RIF. Plaintiff was the only Field Engineer in Cingular's Nashville market who was relocated as part of the RIF process.

7

Plaintiff attempted to compare himself to Caucasian Johnny Keenum, whose relocation package included Cingular's offer to purchase Keenum's house if it did not sell within a specified amount of time after he put it on the market. (Williams Depo. at 154, 171-172, 215.) While Plaintiff believed he was entitled to this benefit as well, Cingular made it clear to him that he, like all other Field Engineers, was not entitled to this benefit. (Id. at 81-82.) Plaintiff conceded at his deposition that Keenum was at a higher management level than he was. (Id. at 99-100.) Thus, Plaintiff was not similarly situated to Keenum. See Smith, 220 F.3d at 762. Even if Plaintiff had been entitled to the house-selling benefit, the evidence shows that he did not put his Nashville home on the market after relocating to Memphis. Thus, even if the relocation package offered to Plaintiff had included this benefit, Plaintiff did not take the necessary steps to trigger it.

Plaintiff presented absolutely no evidence that his race had anything to do with Cingular's decision to give him a $10,000 relocation bonus while Keenum, a higher level manager, also received a commitment from Cingular to purchase his home if it did not sell within a certain time. Cingular is entitled to summary judgment on this claim.

**C. Transfer to Memphis**

Plaintiff claims he was subjected to race discrimination when he was transferred to Memphis in 2005 as a result of the RIF. The undisputed evidence establishes that Plaintiff voluntarily accepted the offer to transfer to Memphis on March 14, 2005. Plaintiff did not raise a claim of discrimination relating to the transfer in an administrative charge filed with the EEOC within 300 days thereafter. See Amini v. Oberlin College, 259 F.3d 493, 499 (6th Cir. 2001) ("the starting date for the 300-day limitations period is when the plaintiff learns of the employment decision itself"); EEOC v. United Parcel Serv., Inc., 249 F.3d 557, 561-562 (6th Cir. 2001) (observing limitations period begins to run on claim for employment discrimination when employer makes and communicates final decision to employee). Plaintiff's charge would have been due by January 8, 2006. Plaintiff did not file an administrative charge until March 10, 2006. Thus, this Court lacks jurisdiction to consider this claim. See Strouss, 250 F.3d at 342.

8

Even if Plaintiff had filed a timely challenge before the EEOC, he cannot establish the elements of his *prima facie* case. In a RIF situation, Plaintiff must prove: (1) he was a member of a protected class; (2) he was qualified for his position; and (3) he was discharged. See Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir. 1990). He must also produce additional direct, circumstantial, or statistical evidence tending to indicate that his employer singled him out for discharge for impermissible reasons. Id. The critical issue in a RIF analysis is whether the Plaintiff has produced sufficient evidence to permit the factfinder to believe that the employer intentionally discriminated against the Plaintiff because of race. See Gragg v. Somerset Tech. College, 373 F.3d 763, 767-768 (6th Cir. 2004). In a RIF case, qualified employees are going to be discharged; thus, the termination of a qualified employee is not inherently suspicious. Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 896 (6th Cir. 1997). Plaintiff must articulate what evidence he believes demonstrates that his race was a motivating factor. Cudnik v. ITT Automotive, Inc., 173 F.3d 428 (6th Cir. 1999) (Table); 1999 WL 68562 (6th Cir. Jan. 20, 1999).

Plaintiff has not shown that he was discharged. Rather, the evidence establishes that Cingular permitted Plaintiff to make a lateral move to Memphis to spare his job during the RIF. Additionally, Cingular paid Plaintiff a $10,000 relocation bonus to assist in his move. Thus, Plaintiff was not subjected to discharge, nor can his lateral transfer be considered an adverse employment action. See Momah v. Dominguez, 239 Fed.Appx. 114, 123 (6th Cir. 2007). Most importantly, Plaintiff has not directed the Court to any direct, circumstantial, or statistical evidence showing that race motivated Cingular's decisions to eliminate Plaintiff's position in Nashville during the RIF or to offer Plaintiff a position in Memphis, which Plaintiff voluntarily accepted. Plaintiff was offered the position in Memphis based on the ranking given to him by his supervisor, Jim Brewer. Plaintiff admitted that Brewer did not discriminate against him or other blacks based on race, Brewer did not do anything that Plaintiff found to be offensive, Brewer did not use racial epithets or slurs, Brewer treated Plaintiff fairly, and Brewer evaluated Plaintiff fairly. (Williams Depo. at 85.) No Nashville Field Engineer with a lower RIF score than Plaintiff was allowed to

9

remain in the Nashville office. Seven Field Engineers, six of whom were white, were either discharged as surplus employees or left prior to the RIF. Plaintiff cannot show that a lower-ranked white Field Engineer was treated better than he was. Plaintiff's mere personal beliefs, conjecture and speculation that race played a role are insufficient to support an inference of race discrimination. See Chappell v. GTE Prods. Corp., 803 F.2d 261, 268 (6th Cir. 1986).

Even if Plaintiff could establish a *prima facie* case, Cingular established a legitimate, non-discriminatory reason for reducing the size of its workforce after the merger. Plaintiff has not shown that Cingular's reasons for its actions were a pretext for racial discrimination. See Laderach, 207 F.3d at 828. Cingular is entitled to summary judgment on this claim.

**D. Retaliation claim**

Plaintiff alleges that Cingular retaliated against him for complaining internally about race discrimination by refusing to allow him to transfer back to Nashville. To establish a *prima facie* case of retaliation, Plaintiff must show: (1) he engaged in an activity protected by Title VII; (2) Cingular knew that he engaged in the protected activity; (3) thereafter, Cingular took action against him that would have been materially adverse to a reasonable employee; and (4) there was a causal connection between the protected activity and the employer's action. See Burlington Northern & Sante Fe Ry. Co. v. White, — U.S. —, 126 S.Ct. 2405, 2409 (2006); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000). Cingular contends that Plaintiff cannot prove the third or fourth elements of his *prima facie* case.

The undisputed evidence shows that Plaintiff did not apply for the first Field Engineer position that opened in Nashville in 2005 and that Plaintiff withdrew his candidacy for the second Field Engineer position that opened in 2005 when he learned the position was not for a Senior Field Engineer, as he thought. Even if Plaintiff had properly requested transfer to Nashville and Cingular denied his application, neither of which occurred, Plaintiff nonetheless cannot establish that he suffered an adverse employment action or that there was any causal connection between his internal complaint of race discrimination in July 2005 and Cingular's failure to transfer him to Nashville in

10

late 2005 or early 2006. The denial of a lateral transfer is not an adverse employment action. James v. Metropolitan Gov't of Nashville, 243 Fed.App. 74, 78 (6th Cir. 2007). Plaintiff enjoyed the same pay, benefits, title and job duties in his role as Field Engineer in Memphis. That Plaintiff preferred to live and work in Nashville rather than Memphis does not establish that Cingular impermissibly relied on race to refuse Plaintiff a lateral transfer to Nashville. Thus, Plaintiff has not shown that he suffered an adverse employment action.

Plaintiff also has not established the required causal connection. Other than Plaintiff's own subjective beliefs and opinions, there is nothing in the record to show that Cingular refused to grant Plaintiff a lateral transfer to Nashville in late 2005 or early 2006 in retaliation for his July 2005 complaint of race discrimination. Even if Plaintiff could make out a *prima facie* case of retaliation, he fails to show pretext. If Plaintiff wanted to transfer to Nashville, company policy required him to apply like any other candidate. Plaintiff did not apply for one position and withdrew his application for another. Cingular filled the positions with other employees. Plaintiff produces no evidence to suggest that a reasonable factfinder could conclude that Cingular's actions lacked a basis in fact, or that the reasons given by Cingular for hiring other employees did not in fact motivate their actions or were insufficient to motivate their actions. See Laderach, 207 F.3d at 828. Cingular is entitled to summary judgment on the retaliation claim.

## IV. CONCLUSION

Accordingly, for all of the reasons stated, Defendant's Motion For Summary Judgment (Docket Entry No. 11) will be granted. This case will be dismissed with prejudice.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

11